

FILED
JUL 0 9 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY　　　　　　　　DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK E. DORSEY,<br>　　　　Plaintiff,<br>v.<br>DANIEL PARAMO, et al.,<br>　　　　Defendants. | Case No.: 17cv1123-CAB(KSC)<br><br>**REPORT AND RECOMMENDA-TION RE DEFENDANTS' MOTION TO DISMISS COUNTS 2 AND 3**<br><br>**[Doc. No. 32]** |

Plaintiff Mark E. Dorsey, a state prisoner proceeding *pro se*, filed this civil rights action pursuant to Title 42, United State Code, Section 1983, alleging that prison officials at R. J. Donovan Correctional Facility violated his rights under the United States Constitution. [Doc. Nos. 3, at pp. 1-13.] Before the Court are defendants' Motion to Dismiss Counts 2 and 3 of the Complaint for Failure to State a Claim [Doc. No. 32] and plaintiff's Opposition thereto [Doc. No. 33]. For the reasons outlined below, it is RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss. However, it is also RECOMMENDED that the District Court GRANT plaintiff leave to amend Counts 2 and 3 of the Complaint.

///

### *Procedural History*

Plaintiff filed his Complaint in this action on June 12, 2017. [Doc. No. 3.] The Complaint names as defendants several officials of the California Department of Corrections and Rehabilitation (CDCR) and several officials at the R. J. Donovan Correctional Facility, where plaintiff is housed. [Doc. No. 3, at pp. 2-6.] In the Complaint, plaintiff alleges that defendants were deliberately indifferent to his serious medical condition when they refused to assign him to a lower bunk because of an injured shoulder (Count 1); violated his right to privacy and safety by requiring him to share a cell with a cellmate (Count 2); and violated his right to equal protection by applying a housing policy in a discriminatory manner (Count 3). [Doc. No. 3, at pp. 7-12.] Because defendants' Motion to Dismiss only seeks dismissal of Counts 2 and 3 of the Complaint, this Report and Recommendation does not include a detailed summary of the allegations in Count 1 of the Complaint.

On October 25, 2017, the District Court issued an Order to Show Cause, because the Complaint was not served within 90 days as required by Federal Rule of Civil Procedure 4(m). [Doc. No. 8, at pp. 1-2.] Plaintiff then indicated to the Court that the Complaint had not been served because he was awaiting the completion of initial screening by the Court. [Doc. Nos. 10, 14.] The District Court granted plaintiff additional time to serve the Complaint and directed the U.S. Marshall to effect service of the Complaint. [Doc. Nos. 11, 18.] On February 27, 2018, the defendants filed their Motion to Dismiss for Failure to State a Claim. [Doc. No. 32.] Plaintiff then filed his Opposition to defendants' Motion on March 16, 2018. [Doc. No. 33.]

### *Discussion*

*I.  **Motion to Dismiss Standards.***

A plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing Fed.R.Civ.P. 8(a)(2)). "Specific facts are not

2

necessary; the statement need only 'give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A motion to dismiss under Federal Rule 12(b)(6) may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside*, 534 F.3d at 1121. A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion to dismiss, the Court must "accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007). However, it is not necessary for the Court "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[T]hreadbare recitals" of the elements of a cause of action, "supported by mere conclusory statements," are not enough. *Ashcroft v. Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.

On the other hand, "[a] document filed *pro se* is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . .'" *Erickson v. Pardus*, 551 U.S. at 94. Particularly in civil rights cases, courts have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). "A court should not grant a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

3

in support of his claim which would entitle him to relief." *Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524, 527 (9th Cir. 1992) (internal quotations omitted)

## II. *Section 1983 Claims.*

Under Section 1983, prison officials can be sued in their individual capacities and held personally liable for money damages if they violate an inmate's constitutional rights. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. To prevail on a claim for violation of constitutional rights under Title 42, United States Code, Section 1983, a plaintiff must prove two elements: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege or immunity conferred by the Constitution or the laws of the United States. 42 U.S.C. § 1983; *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000).

## III. *Allegations in Count 2 of the Complaint.*

In Count 2 of the Complaint, plaintiff states that he is "an EOP Mental Health Patient/Prisoner." [Doc. No. 3, at p. 10.] Plaintiff alleges in Count 2 that the prison's policy, practice, or procedure of "double celling" prisoners violates his rights under the Eighth Amendment for several reasons. First, plaintiff claims that "double celling," creates an unreasonable risk to his safety, "as 'EVIDENCED' by thousands of incident reports documenting in-cell violence, injuries, rapes, deaths, etc." [Doc. No. 3, at p. 10.] Second, plaintiff alleges that "double celling" violates his right to privacy, because it requires him to expose "his private body parts" to his cellmate on a daily basis while toileting and on three days a week when he must bathe in his cell. [Doc. No. 3, at p. 10.] Third, plaintiff alleges that "double celling" forces him to be placed in a cell with other prisoners who have "serious mental health disorders," and there is no adequate screening process to make sure prisoners placed in the same cell are compatible. According to plaintiff, he is "routinely" informed by prison officials at the end of the 9:00 p.m. shift

4

"that he is receiving a mentally ill cellmate, with no compatibility screening." [Doc. No. 3, at p. 10.] If plaintiff objects to a particular cellmate for safety or non-compatibility reasons, he claims he is punished with placement in "Ad Seg" or with other disciplinary measures. [Doc. No. 3, at p. 10.] Plaintiff has complained about these issues to various officials but has been "denied action." [Doc. No. 3, at p. 10-11.]

### A. *Double Celling As Alleged Violation of the Eighth Amendment.*

In their Motion to Dismiss, defendants argue that plaintiff has failed to state a viable claim for a violation of his constitutional rights in Count 2, because it is well settled that double celling does not violate the Eighth Amendment. [Doc. No. 32-1, at pp. 11-14.] In his Opposition, plaintiff argues that Count 2 should not be dismissed, because it states a cause of action under the Eighth Amendment "as plead." [Doc. No. 33, at pp. 2-5, 8.] Plaintiff argues that he has a right to bodily privacy (*i.e.*, "a constitutionally protected interest in shielding his nude body from wandering eyes"), and double celling violates this right, because he must expose his private body parts to his cell mate on a daily basis while toileting and/or bathing inside the cell. [Doc. No. 33, pp. 2-4.] Plaintiff also argues that double celling violates his rights under the Eighth Amendment, because it puts him at risk for violence and sexual assaults. [Doc. No. 33, at pp. 4-6.] In support of this argument about the risks to his safety, plaintiff cites an incident with a "mentally ill prisoner" that is not alleged in his Complaint. [Doc. No. 33, at p. 5.]

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). However, the Eighth Amendment does not "mandate comfortable prisons" that are "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347. The Eighth Amendment does proscribe the "unnecessary and wanton infliction of pain," which includes those sanctions that are "so totally without penological justification that it results

5

in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976). This includes not only physical torture, but any punishment incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotations and citations omitted).

To prevail on an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must satisfy two requirements: one objective and one subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the objective requirement, the prison official's acts or omissions must be objectively, sufficiently serious and result in the denial of the minimal civilized measure of life's necessities. *Id.* (internal citations and quotations omitted). In this regard, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* at 832 (internal quotations and citations omitted).

Under the subjective component, a prison official must have a "sufficiently culpable state of mind." *Id.* at 834. "[T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Conversely, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. In addition, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

In *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981), the Supreme Court held that double-celling prison inmates is not a violation of the Eighth Amendment. The inmates in *Rhodes v. Chapman* filed suit seeking an injunction because "double celling confined cellmates too closely" and caused overcrowding of the prison. *Id.* at 340. Based on

"extensive findings of fact" in the record, the Supreme Court concluded that double celling of inmates did not lead to conditions that violated the Eighth Amendment, such as the unnecessary infliction of pain; a deprivation of "essential food, medical care, or sanitation;" or the creation of "other conditions intolerable for prison confinement." *Id.* at 348-350.

In Count 2 of the Complaint, plaintiff has not alleged that double celling led to deprivations of his basic needs, such as adequate food, clothing, shelter, sanitation, or medical care. He does not claim that any pain, suffering, illness, or injury resulted from double celling. A lack of privacy that results from sharing a cell with another inmate is not sufficiently serious enough to result in "the denial of the minimal civilized measures of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834.

Nor are there sufficient allegations in Count 2 of the Complaint to indicate that prison officials ignored an obvious risk to plaintiff's health or safety or that prison officials had knowledge of a substantial risk to plaintiff's health or safety but failed to take reasonable measures to protect plaintiff. In other words, plaintiff's mere reference to incident reports about violence in prison is not enough to support an Eighth Amendment claim.

There is also "no Eighth Amendment or due process right to be allowed to choose [one's] cellmate for compatibility." *Allen v. Figueroa*, 56 F.3d 70 (9th Cir. 1995). Therefore, without more, it not enough for plaintiff to allege that he was "forced" to share a cell with other prisoners who had mental health disorders "without compatibility screening." [Doc. No. 3, at p. 10.] Without more, these allegations in Count 2 are not sufficient to indicate the existence of an obvious risk to plaintiff's safety or to indicate prison officials were aware of a substantial risk to plaintiff's safety but failed to take reasonable steps to protect him from the risk. Accordingly, it is RECOMMENDED that the District Court GRANT defendant's Motion to Dismiss the Eighth Amendment claim in Count 2 of plaintiff's Complaint for failure to state a claim.

///

### B. *Right to Privacy Under the Fourth Amendment.*

Plaintiff argues in his Opposition to defendants' Motion to Dismiss that Count 2 should not be dismissed, because the Ninth Circuit has "clearly recognized" that an inmate has a constitutionally protected right or interest "in shielding his nude body from unwanted and wandering eyes." [Doc. No. 33, at p. 3.] It therefore appears that in Count 2, plaintiff may be attempting to state a claim for a violation of his right to privacy under the Fourth Amendment. However, for the reasons outlined more fully below, it is this Court's view that Count 2 does not include sufficient allegations to state a right of privacy claim under the Fourth Amendment.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches. . . ." U.S. Const. art IV. "The applicability of the Fourth Amendment turns on whether 'the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy that has been invaded by government action.'" *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). "[W]hile persons imprisoned for crime enjoy many protections of the Constitution," such as "a reasonable right of access to the courts" and a reasonable right to exercise their religious freedom, "imprisonment carries with it the circumscription or loss of many significant rights." *Id.* "The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities." *Id.*

In *Hudson v. Palmer*, the Supreme Court held that "society is not prepared to recognize as legitimate ***any*** subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526 (emphasis added). According to the Supreme Court, "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.* "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to insure institutional security and internal order." *Id.* at 527-528. As a result, the Supreme Court in *Hudson v. Palmer* held that "the prisoner's expectation of

8

17cv1123-CAB(KSC)

### B. *Right to Privacy Under the Fourth Amendment.*

Plaintiff argues in his Opposition to defendants' Motion to Dismiss that Count 2 should not be dismissed, because the Ninth Circuit has "clearly recognized" that an inmate has a constitutionally protected right or interest "in shielding his nude body from unwanted and wandering eyes." [Doc. No. 33, at p. 3.] It therefore appears that in Count 2, plaintiff may be attempting to state a claim for a violation of his right to privacy under the Fourth Amendment. However, for the reasons outlined more fully below, it is this Court's view that Count 2 does not include sufficient allegations to state a right of privacy claim under the Fourth Amendment.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches. . . ." U.S. Const. art IV. "The applicability of the Fourth Amendment turns on whether 'the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy that has been invaded by government action.'" *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). "[W]hile persons imprisoned for crime enjoy many protections of the Constitution," such as "a reasonable right of access to the courts" and a reasonable right to exercise their religious freedom, "imprisonment carries with it the circumscription or loss of many significant rights." *Id.* "The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities." *Id.*

In *Hudson v. Palmer*, the Supreme Court held that "society is not prepared to recognize as legitimate ***any*** subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526 (emphasis added). According to the Supreme Court, "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.* "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to insure institutional security and internal order." *Id.* at 527-528. As a result, the Supreme Court in *Hudson v. Palmer* held that "the prisoner's expectation of

8

17cv1123-CAB(KSC)

privacy always yield[s] to what must be considered the paramount interest in institutional security." *Id.* at 528. In short, "'[l]oss of freedom of choice and privacy are inherent incidents of confinement." *Id.* citing *Bell v. Wolfish*, 441, U.S. 520, 537 (1979).

On the other hand, as petitioner contends, the Ninth Circuit has acknowledged that "incarcerated prisoners retain a limited right to bodily privacy [under the Fourth Amendment]." *Michenfelder v. Sumner*, 860 F.2d 328, 333, 338 (9th Cir. 1988). The Ninth Circuit in *Michenfelder* reasoned that: "Shielding one's unclothed figure from the view of strangers, particularly strangers of the opposite sex is impelled by elementary self-respect and personal dignity." *Id.* at 333. However, the Ninth Circuit also acknowledged that "the inmates' right to privacy must yield to the penal institution's need to maintain security. . . ." *Id.* at 334.

The inmate in *Michenfelder*, 860 F.2d at 328, challenged "the constitutionality of the prison's search and surveillance activities when performed by members of the opposite gender." *Id.* at 334. Citing the Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78 (1987), the Ninth Circuit in *Michenfelder* held that a rational relationship test must be applied to determine whether employing female guards was "reasonably related to legitimate penological interests."[1] *Id.* at 334. Essentially, the Ninth Circuit concluded

---

[1] In *Turner v. Safely*, 428 U.S. 76, the Supreme Court considered the constitutionality of prison regulations related to inmate marriages and stated as follows: "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 81, 89. The Supreme Court cited several factors to consider to determine "the reasonableness of the regulation at issues." *Id.* at 89. These factors included: (1) whether the regulation has a "valid, rational connection" to a "legitimate governmental interest"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what impact an accommodation of the right would have on guards, other inmates, and "the allocation of prison resources"; and (4) whether there are "ready alternatives" to the regulation. *Id.* at 89-91. "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

there was no violation of the inmate's Fourth Amendment right to privacy, because the employment of female guards was "reasonably related to prison needs" and the observations of female guards were "limited," "indistinct," and "not so degrading as to warrant court interference." *Id.* at 334, 338.

Similarly, in *Grummet v. Rushen*, 779 F.2d 491 (9th Cir. 1985), inmates filed a class action seeking declaratory relief and an injunction based on allegations that their constitutional rights to privacy were violated because female correctional officers could see their nude bodies while they were dressing, showering, toileting, and being strip searched. *Id.* at 492. Citing the Fourth Amendment, the Ninth Circuit concluded there were no constitutional violations, because surveillance by female correctional officers was reasonable under the circumstances. In reaching this conclusion, the Ninth Circuit noted that observations by female guards could be described as "restricted by distance," "casual in nature," infrequent, and irregular, and female guards only observed or participated in strip or body cavity searches in emergency situations. *Id.* In addition, the Ninth Circuit noted there were legitimate reasons to have female guards in the challenged positions. *Id.*

A prisoner plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). Here, plaintiff has not alleged any facts to indicate that any loss of bodily privacy that results from double celling is unreasonable or unjustifiable under the circumstances. Nor has plaintiff pled any facts to indicate the policy of double celling inmates in circumstances that inevitably lead to at least some loss of bodily privacy is not reasonably related to legitimate correctional objectives, such as "the close and continual surveillance of inmates and their cells [that is] required to insure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. at 527-528. Indeed, the loss of privacy alleged in the Complaint in this case is comparable to and no more intrusive than that alleged by the inmates in *Michenfelder*, 860 F.2d at 334, and *Grummett*, 779 F.2d at 492. As noted above, the facts at issue in these cases indicate that

10

female guards were placed in positions that allowed them to observe male inmates while they were showering, using the toilet, or being strip searched, and the Ninth Circuit concluded there were no violations of the inmates' rights to privacy. *Michenfelder*, 860 F.2d at 329-334; *Grummett*, 779 F.2d at 492-496. For these reasons, it is this Court's view that plaintiff has failed to state a claim for violation of his right to privacy under the Fourth Amendment. Accordingly, IT IS RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss Count 2 for the additional reason that plaintiff has not pled facts sufficient to state a claim for a violation of his right to privacy under the Fourth Amendment.

## IV. *Allegations in Count 3 of the Complaint.*

Count 3 of the Complaint alleges that plaintiff "is being denied Equal Protection of treatment and/or privileges provided to 'similarly situated prisoners.'" [Doc. No. 3, at p. 12.] In support of Count 3, plaintiff cites Exhibit G, a CDCR policy Memorandum dated January 19, 2016, and entitled "INMATE HOUSING ASSIGNMENT CONSIDERATIONS DURING THE SCEENING AND HOUSING PROCESS." [Doc. No. 3, at pp. 56-58.] Also attached to the Complaint as Exhibit F are forms indicating that plaintiff pursued an inmate appeal requesting "single cell housing," but he was advised that he is "not eligible for single cell housing." [Doc. No. 3, at pp. 47-52.]

Plaintiff alleges that the policies and procedures set forth in Exhibit G allow prison officials to "pick and choose" which prisoners are entitled to be housed in "single cells." [Doc. No. 3, at p. 12.] For reasons which are not explained in the Complaint, plaintiff believes Exhibit G allows prison officials to assign prisoners to single cells "in a discriminatory fashion." [Doc. No. 3, at p. 12.] Plaintiff further alleges that prisoners who are assigned to single cells are not subjected to the conditions described in Count 2, such as violence, injuries, rapes, deaths, and violations of their privacy. [Doc. No. 3, at p. 12.] Despite his complaints to officials about these issues, plaintiff claims there has not been "any action." [Doc. No. 3, at p. 12.]

///

11

1  "Prisoners are protected under the Equal Protection Clause of the Fourteenth
2  Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S.
3  539, 556 (1974). To state a claim for violation of the Equal Protection Clause, "a
4  plaintiff must show that the defendants acted with an intent or purpose to discriminate
5  against the plaintiff based upon membership in a protected class." *Barren v. Harrington*,
6  152 F.3d 1193, 1194 (9th Cir.1998). In addition to race, protected classes covered by the
7  Equal Protection Clause include religion and national origin. *Damiano v. Fla. Parole &
8  Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986). "Intentional discrimination
9  means that a defendant acted at least in part because of a plaintiff's protected status."
10 *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

Alternatively, a plaintiff can state an Equal Protection claim that is not based on membership in a protected class by alleging that he or she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In *Village of Willowbrook v. Olech*, 528 U.S. 562, for example, the Supreme Court concluded the plaintiff stated a viable Equal Protection claim by alleging that the defendant intentionally, irrationally, and arbitrarily required a 33-foot easement as a condition to connecting her property to the municipal water supply but only required a 15-foot easement from other similarly situated property owners. *Id.* at 565.

On its face, the challenged policy set forth in the January 19, 2016 memorandum applies equally to all inmates "with medical, mental health condition or developmental disabilities when determining whether to grant single-cell status. . . ." [Doc. No. 3, at p. 56.] The memorandum states that: "All staff are to be cognizant of all available factors when determining an inmate's housing assignment." [Doc. No. 3, at p. 56.] A number of factors are listed in the memorandum that should be considered in weighing whether single cell status is necessary. [Doc. No. 3, at p. 56.] The memorandum also lists examples of inmates who should be considered for single-cell status "on the basis of vulnerability." [Doc. No. 3, at p. 57.] In addition, the memorandum sets forth the

procedures to be followed when an inmate advises staff of "a vulnerability issue" that could require a change in housing to ensure safety. [Doc. No. 3, at pp. 57-58.]

Based on the bare allegations in Count 3 of the Complaint, it is unclear why plaintiff believes that the policy in the January 19, 2016 memorandum is being applied in a discriminatory or arbitrary manner. Contrary to plaintiff's allegations, the policy in the memorandum does not permit prison officials to simply "pick and choose" which prisoners are given single cells. [Doc. No. 3, at p. 12.] Rather, the policy requires prison officials to consider "all available factors when determining an inmate's housing assignment." [Doc. No. 3, at p. 56.] The policy also sets forth a long list of factors to be considered to determine whether single cell status is appropriate for a particular inmate. [Doc. No. 3, at pp. 56-58.]

Plaintiff does not claim membership in a protected class. In addition, unlike the plaintiff in *Village of Willowbrook v. Olech*, 528 U.S. 562, plaintiff does not allege any facts indicating he was intentionally treated differently than others similarly situated. For example, he does not allege that prison officials applied the factors set forth in the policy memorandum to inmates with medical and mental health conditions comparable to his but reached a different result with no rational basis. Without more, it appears based on the allegations in the Complaint and the information attached to the Complaint that prison officials set forth a rational basis for concluding plaintiff was not eligible for single cell housing. [Doc. No. 3, at pp. 53-54.] Plaintiff does not challenge the basis for this decision or state why he believes he was treated differently than others in the same or similar situation. To state a viable claim, plaintiff must support his allegations with sufficient facts. Count 3 includes only conclusory allegations that prison officials can simply "pick and choose" which prisoners are given single cells.

Based on the foregoing, it is this Court's view that plaintiff has failed to state a claim for violation of his constitutional right to Equal Protection. Therefore, on the facts as alleged, IT IS RECOMMENDED that the District Court GRANT defendants' Motion to Dismiss Count 3 for failure to state a claim.

## V. *Leave to Amend.*

Prior to dismissal, a pro se litigant "is entitled to notice of the complaint's deficiencies and an opportunity to amend." *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995) (internal quotation marks omitted). However, "[a] district court may deny leave to amend when amendment would be futile." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013). "The failure to cure deficiencies by previous amendments is one of the factors to be considered in deciding whether justice requires granting leave to amend." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.1989). "[L]eave to amend may be denied if the new complaint does not cure deficiencies in the old one and is doomed to the same fate." *Owens v. Hinsley*, 635 F.3d 950, 956 (7th Cir. 2011). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Nordstrom v. Ryan*, 762 F.3d 903, 920 (9th Cir. 2014.)

In this case, plaintiff has not previously been granted leave to amend. Although unlikely, it is possible plaintiff might be able to cure the defects in his Complaint by alleging additional facts. It is therefore RECOMMENDED that the District Court GRANT plaintiff leave to amend his Complaint.

## *Conclusion*

Having reviewed defendants' Motion to Dismiss, the undersigned Magistrate Judge submits this Report and Recommendation to the United States District Judge assigned to this case pursuant to Title 28, United States Code, Section 636(b)(1). For all of the reasons outlined above, IT IS HEREBY RECOMMENDED that the District Court issue an Order GRANTING defendants' Motion to Dismiss Counts 2 and 3 of the Complaint. [Doc. No. 32.] Pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in Counts 2 and 3 fail "to state a claim upon which relief can be granted."

Fed.R.Civ.P. 12(b)(6). IT IS ALSO RECOMMENDED that the District Court GRANT plaintiff leave to amend Counts 2 and 3 of the Complaint, because it is possible plaintiff could cure the defects in his pleading.

IT IS HEREBY ORDERED that *no later than August 8, 2018* any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties *no later than August 15, 2018*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: July 9, 2018

Hon. Karen S. Crawford
United States Magistrate Judge